IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 09-cv-01506-PAB-MEH

SONJA MORRIS,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, doing business as
MEMORIAL HEALTH SYSTEM,

    Defendant.

---

**ORDER**

---

This matter is before the Court on defendant's motion to dismiss plaintiff's first cause of action for violation of her First Amendment right to petition ("Def.'s Mot.") [Docket No. 13]. Because the motion was filed after defendant filed its answer, the parties agree that the motion should be converted into a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

**I. BACKGROUND**

The following facts are drawn from plaintiff's complaint and her Notice of Claim ("Notice").[1]  Plaintiff Sonja Morris is a registered nurse who, starting in October, 2007, worked as a member of the Heart Team at Memorial Hospital in Colorado Springs,

---

[1] "[T]he district court may consider documents referred to in the complaint if the documents are central to plaintiff's claims and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Both requirements are satisfied here, and the Court will therefore consider the substance of plaintiff's Notice in resolving defendant's motion.

Colorado. She alleges that she was wrongfully removed from the Heart Team because she complained about the behavior of Dr. Brian Mahan, the Chairman of the Department of Cardiac and Thoracic Surgery at Memorial Hospital and a Member of the Memorial Hospital Heart Team.

On one occasion in June 2008, and then again approximately two weeks later, Dr. Mahan approached Ms. Morris from behind and hit her in the back of the head. Ms. Morris told him to stop on each occasion. Then, on August 28, 2008, Ms. Morris assisted Dr. Mahan during a pericardiectomy[2] performed after normal business hours. During the procedure, Ms. Morris stood at a work station approximately fifteen feet from Dr. Mahan. During the procedure, Dr. Mahan removed pericardial tissue which was approximately four inches long and six inches wide. The tissue was bloody and covered with other bodily fluids.

Dr. Mahan threw the pericardial tissue at Ms. Morris. It hit her in the leg and then landed on the floor, at which time Dr. Mahan jokingly exclaimed an expletive followed by "I hit her. Can we get cultures on that?" He and the other members of the Heart Team "chuckled" at the sight. Ms. Morris could not leave to clean the blood and fluids from her pant leg because it was an after-hours procedure and no other nurses were available to relieve her.

Ms. Morris reported the aforementioned incidents to Memorial Hospital's Human Resources Department. The hospital took no corrective action. Thereafter, on December 10, 2008, Ms. Morris submitted her Notice to the hospital claiming damages

---

[2] A pericardiectomy involves removal of all or part of the protective tissue around the heart, known as the pericardium.

arising out of the incident involving the pericardium.  One week after filing the Notice, Ms. Morris received a letter from the chief officer of the Human Resources Department informing her that she would no longer be a member of the Heart Team and was being reassigned to the main operating room.

Ms. Morris alleges that she was reassigned pursuant to defendant's policy or custom of disciplining employees who file Notices.  She filed the present action on June 26, 2009 and amended her complaint on June 30, raising two claims, one alleging violation of her First Amendment right to petition and the other alleging gender discrimination in violation of Title VII.  Defendant now moves to dismiss the first claim for relief, arguing that Ms. Morris has failed to demonstrate that the Notice was speech regarding a matter of public concern.

## II.  STANDARD OF REVIEW

The Court reviews this motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) much as it would a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Park University Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) ("We review a district court's grant of a motion for judgment on the pleadings *de novo*, using the same standard that applies to a Rule 12(b)(6) motion.").  Accordingly, the Court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same."  *Id.*

Therefore, to survive defendant's motion, the complaint must allege enough factual matter that, taken as true, makes his "claim to relief . . . plausible on its face."

*Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

## III.  DISCUSSION

The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend I.  Plaintiff, a public employee, contends that defendant, her employer, infringed her right under the First and Fourteenth Amendments to petition the government.[3]  The Tenth Circuit applies the same legal analysis to "right to petition" and "free speech" claims by public employees.  *Martin v. The City of Del City*, 179 F.3d 882, 889 (10th Cir. 1999); *see Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir. 1990) ("Schalk's right to petition is inseparable from her right to speak.  As such, we see no

---

[3] Although the First Amendment applies to state actors by way of incorporation into the due process clause of the Fourteenth Amendment, I will, for ease of reference, refer only to the First Amendment.

4

reason to subject this claim to a different sort of analysis."). As discussed more fully below, the question presented to the Court is whether plaintiff's Notice was on a matter of public concern. *Martin*, 179 F.3d at 889.

Plaintiff argues that the holding in *Martin* should not apply to her case because filing her Notice was a prerequisite to filing suit. Pl.'s Response at 14 (citing Colo. Rev. Stat. § 24-10-109). Therefore, she argues that she is being barred access to the courts, an essential aspect of the right to petition the government. Plaintiff cites *San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994), where the court held that the public concern analysis which applies to free speech claims by public employees does not apply in right to petition cases. Plaintiff's argument is unavailing.

The *Martin* court "note[d]. . . that the First Amendment separates the Petition Clause from the Free Speech Clause," and recognized that the "Supreme Court has interpreted the Petition Clause to apply in a variety of circumstances," including "the right of access to the courts." *Martin*, 179 F.3d at 887 (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is but one aspect of the right of petition.")). The court in *Martin* proceeded to discuss, and explicitly reject, the reasoning in *San Filippo*, where the speech "included the filing . . . of lawsuits." *San Filippo*, 30 F.3d at 434. In other words, the Tenth Circuit has not suggested that the public concern analysis is inapplicable when the petition takes the form of seeking judicial redress. Plaintiff identifies no reason why a prerequisite to suit would enjoy greater First Amendment protection than a lawsuit itself. Cf. *Martin*, 179 F.3d at 889 ("We are . . . persuaded by Judge Becker's dissent in *San Filippo* to 'adopt

the position of the seven other circuits which hold that a public employee plaintiff who has "petitioned" is in no better position than one who has merely exercised free speech.'") (quoting *San Filippo*, 30 F.3d at 449).  Accordingly, the Court shall apply the same analytical framework to plaintiff's right to petition claim as applies to free speech claims.  *See Martin*, 179 F.3d at 889 ("[S]uch other First Amendment claims must meet the 'public concern' test."); *see also Richards v. Perkins*, 373 F. Supp. 2d 1211, 1217 (D. Kan. 2005) ("Clearly, free speech and access to the courts are constitutionally protected rights.  Under Tenth Circuit law, however, plaintiff must show that his speech or petition touched upon matters of public concern.").

When doing so, it is important to emphasize that "the government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment."  *Connick v. Myers*, 461 U.S. 138, 156 (1983).  Rather, public employees retain the right "as citizens to comment on matters of public interest."  *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).  With that said, "the government has legitimate interests in regulating the speech of its employees that differ significantly from its interests in regulating the speech of people generally," and "therefore . . . the scope of public employees' First Amendment rights must be determined by balancing 'the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"  *Connick*, 461 U.S. at 157 (quoting *Pickering*, 391 U.S. at 568).  Implicit in this balancing test is the principle that public employees are free to "engage in expression unrelated to their

employment while away from the work place." *Id.* "The balancing test . . . comes into play only when a public employee's speech implicates the government's interests as an employer." *Id.*

These principles comprise a five-prong test courts use to determine whether a public employee was denied her First Amendment rights:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009) ("The first three 'prongs' are said to be issues of law to be decided by the court; the last two are factual issues to be decided by the factfinder.").[4] Defendant's motion limits its argument exclusively to the second prong, asserting that plaintiff's Notice was not on a matter of public concern. In resolving that issue, "courts must consider the 'content, form, and context of a given statement, as revealed by the whole record.'" *David v. City and County of Denver*, 101 F3d 1344, 1355 (10th Cir. 1996) (quoting *Connick*, 461 U.S. at 147-48). Furthermore, "courts focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Woodward v. City of Worland*, 977 F.2d 1392, 1403 (10th Cir. 1992).

Plaintiff's Notice consists, in pertinent part, of the following:

---

[4]This approach is known as the *Garcetti/Pickering* test, named for the Supreme Court decisions in *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

> Ms. Morris has been employed by Memorial Hospital for nearly nine years as a nurse. On August 28, 2008, while working at Memorial Hospital as an operating room nurse on the heart team, Ms. Morris was assigned to assist with a pericardiectomy. A pericardiectomy is the surgical removal of all or part of the patient's pericardium, the protective layer of tissue surrounding the heart. During the operation on August 28, 2008, Ms. Morris was at a work station approximately fifteen feet away from the operating table where Dr. Mahan was performing the pericardiectomy. Dr. Mahan's back was toward Ms. Morris during the procedure. The pericardial tissue Dr. Mahan removed from the patient was approximately four inches long and six inches wide, and covered with blood and other bodily fluids. After Dr. Mahan removed the patient's pericardium, he turned toward Ms. Morris, and threw the bloody pericardial tissue at her. The tissue thrown by Dr. Mahan struck Ms. Morris in the leg, and fell to the floor. The pericardial tissue left a significant amount of blood and fluid on Ms. Morris' leg. After the pericardium hit Ms. Morris' leg and landed on the floor, Dr. Mahan jokingly said "Oh shit, I hit her. Can we get cultures on that?" As the heart team was in the middle of an after-hours procedure, Ms. Morris could not leave the operating room, and no other nurses were available to relieve her in order for her to clean the patient's blood and other fluids from her leg. Ms. Morris was required to remain in the operating room in bloody pants for approximately one hour before she was able to change clothes and clean herself up.

Ex. A. to Def.'s Mot. at 1. Plaintiff stated the nature of her alleged injuries as "economic loss, humiliation and emotional distress." *Id.* Furthermore, the first line of the Notice indicates that it was "given to the City of Colorado Springs and Dr. Bryan Mahan for various torts, including, but not limited to, outrageous conduct and battery." *Id.*

Plaintiff, in filing her Notice, was speaking as an employee, limiting her allegations to her own claims of mistreatment at the hands of Dr. Mahan. *See David*, 101 F.3d at 1355 ("In deciding whether a particular statement involves a matter of public concern, the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen."); *cf. Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006) ("So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate

efficiently and effectively."). Plaintiff's Notice is limited entirely to her personal experience during a single incident with Dr. Mahan and her own claimed injuries. As such, it is not a matter of public concern. *See Worley v. Bd. of County Commissioners of Park County*, 44 F. App'x 892, 895 (10th Cir. 2002) (unpublished) ("Defendants correctly assert that plaintiff's speech, the Notice of Claim, was not a matter of public concern insofar as it alleged her own potential claims of sexual harassment.") (citing *David*, 101 F.3d at 1356 & n.2); *see also Woodward*, 977 F.2d at 1403-04 ("Here the thrust of the Plaintiffs' speech was that they personally were being subjected to sexual harassment and they wanted it to stop."). Plaintiff has not alleged "that other employees have been subjected to" similar mistreatment or that her allegations relate to defendant's "performance of its governmental responsibilities." *David*, 101 F.3d at 1356.

Plaintiff is correct that "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004). Yet, that does not mean that speech containing information that was covered by the news media or which could conceivably be of interest to people outside the specific employment context is per se a "matter of public concern." *See Koch v. City of Hutchinson*, 847 F.2d 1436, 1448 (10th Cir. 1988) ("Media publicity of the dispute is not determinative of the question of whether Koch's speech was on a matter of public

concern for First Amendment purposes.").[5]  Rather, the speech itself must be framed as such; "speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern."  *David*, 101 F.3d at 1355; *see Schalk*, 906 F.2d at 495 ("[I]t is not enough that the topic of the speech be of general interest to the public; in addition, what is *actually said* must meet the public concern threshold.").

Moreover, other than a conclusory allegation that her Notice "was on a matter of public concern," Compl. [Docket No. 1] at 5, ¶ 35, plaintiff's complaint includes no allegations evidencing any motive to address matters beyond plaintiff's personal grievance.  *Cf. Id.* at 4-5, ¶ 27 ("On December 10, 2008, Plaintiff sought to redress her grievance by submitting a Notice of Claim to Defendants, claiming damages for being intentionally struck with bloody human tissue.").  Indeed, in response to defendant's motion, plaintiff does not even argue that her intent was to raise a matter of public concern.  Rather, she argues that the subject matter implicates the functioning of a public institution and raises overall concerns regarding protection of public health.  But the relevant question is not whether the petition could have been framed as a matter of public concern.  *Cf. Kosan v. Utah Dep't of Corrections*, 290 F. App'x 145, 152 (10th Cir. 2008) (unpublished) ("Kosan's communication with Burr's Stake President, and the

---

[5]On this motion for judgment on the pleadings, the Court does not consider the substance of the news accounts plaintiff attaches to her response to defendant's motion.  In any event, plaintiff's argument on this score essentially relies upon the mere existence of such news coverage.  Accepting, *arguendo*, plaintiff's representation that her dispute was covered by the media does not alter the analysis, for the reasons outlined above.

resulting limitations imposed by Shipannboord and Brough, concerned her allegations of misconduct against Burr – specifically, sexual harassment.  Nothing in the record indicates, however, that Kosan spoke, or was prohibited from speaking about, sexual harassment 'as a widespread practice affecting [UDOC's] performance of its public responsibilities.'  Because Kosan's speech and the resulting limitations related to a purely personal grievance affecting her own conditions of employment, her free-speech claim fails.") (citation omitted).  The relevance to matters of potential public interest is clear.  Such matters, however, are presented to the Court as post hoc arguments by counsel and were not even hinted at in plaintiff's Notice.  *See Woodward*, 977 F.2d at 1404 ("Although there were several general references in their complaints to the possibility that other women may also have been subjected to sexual harassment, no specifics were given nor was the purpose or substance of the complaints to assert that the sexual harassment prevented the JPB from properly discharging its official responsibilities.") (footnote omitted).  In sum, because plaintiff "focus[es] on the conditions of her own employment" and does not "allege that other employees have been subjected" to similar mistreatment or that the conduct described "interfered with [defendant's] performance of its governmental responsibilities," her Notice does "not involve matters of public concern . . . ."  *David*, 101 F.3d at 1356.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's motion [Docket No. 13] is GRANTED.  Accordingly, it is further

**ORDERED** that plaintiff's first cause of action for violation of her First Amendment right to petition is DISMISSED. Plaintiff's second cause of action is the sole remaining claim in the case.

DATED February 25, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge