IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01506-PAB-MEH

SONJA MORRIS,

      Plaintiff,

v.

CITY OF COLORADO SPRINGS, doing business as
MEMORIAL HEALTH SYSTEM,

      Defendant.

---

**ORDER**

---

    This matter is before the Court on defendant's motion for summary judgment

[Docket No. 55].  The motion is fully briefed and ripe for disposition.

**I.  BACKGROUND**

    Unless otherwise indicated, the following facts are not in dispute.  Plaintiff Sonja

Morris began working for defendant Memorial Health System ("MHS") in January 2000

as a staff nurse.  As an employee, plaintiff had access to MHS's sexual harassment

policy via the MHS intranet system.  That policy prohibits "[a]ctions, words, jokes,

comments, and/or visuals based on an individual's sex."  Docket No. 55-2 at 2.  The

policy further requires an employee "who feels he/she is the victim of harassment by a

co-worker, peer, doctor, patient and/or visitor . . . to report the incident to a supervisor

or a member of Human Resources immediately."  Docket No. 55-2 at 2.

    In November 2006, plaintiff joined MHS's perioperative program, assisting in all

but heart surgeries.  Plaintiff joined the Heart Team, which is responsible for all heart

surgeries, in October 2007.  Dr. Bryan Mahan is a member of the Heart Team and the chairman of cardiac and thoracic surgery at MHS.  Plaintiff's supervisor was Maria Pluemer, the director of surgery.  Dr. Mahan, however, would supervise plaintiff's work during surgeries in which both took part.

Plaintiff contends that, after joining the Heart Team, Dr. Mahan sexually harassed her.  Plaintiff alleges that the harassment took the form of him belittling and talking down to her as well as twice hitting her in the back of the head by flicking her with his finger without her permission.  Dr. Mahan admits to flicking plaintiff on the back of the head once, but does not recall flicking her in the head a second time.[1]  Female employees other than plaintiff had complained about Dr. Mahan's conduct as well. Plaintiff believes that Dr. Mahan treats female co-workers less favorably than male co-workers and prefers working with men.

During a heart surgery on the Friday before Labor Day in 2008, Dr. Mahan also threw a piece of bodily tissue called the pericardium in plaintiff's direction.  The tissue hit plaintiff in the leg, and plaintiff had to remain in the operating room for another hour with blood and bodily fluids on her pant leg.  Upon the tissue hitting plaintiff, Dr. Mahan exclaimed and then joked about getting cultures done on the bodily tissue.  Plaintiff reported what happened during the surgery to Ms. Pluemer on the following Tuesday. Ms. Pluemer told plaintiff that the incident would be investigated.  Ms. Pluemer then reported the incident to the head of human resources for MHS, Carlene Crall.  Ms. Crall spoke with plaintiff, who described the incident during the surgery as well as the two

---

[1]Dr. Mahan also flicked another female employee in the back of the head.  Dr. Mahan contends that he did so in a playful manner after the employee pinched his arm.

occasions when Dr. Mahan hit her in the back of the head.  Ms. Crall took the issue to

Dr. Lawrence McEvoy, the Chief Executive Officer of MHS, and Dr. Daniel Balch, its

Chief of Staff.  Ms. Crall also discussed plaintiff's allegations with Dr. Mahan.  Ms. Crall

testified that Dr. Mahan told her he did not intend to hit plaintiff with the pericardium and

that he had apologized to plaintiff.  Plaintiff disputes that Dr. Mahan did not intend to hit

her and denies that he apologized to her.  Two other employees present in the

operating room at the time confirmed to Ms. Crall that Dr. Mahan had not intended to hit

plaintiff with the pericardium.

Dr. Balch and Dr. McEvoy sent a memorandum on September 11, 2008 to

members of the Heart Team informing them that Dr. Mahan would not be operating until

he demonstrated his willingness to be a part of a healthy operating environment.  The

memorandum also informed the members of the Heart Team that they would

participate in a team building program led by an outside professional.  The

memorandum concluded by stating that "[a]nyone who believes he or she cannot, in

good conscience, participate in and support the creation of a new environment in the

heart room will have the option to transfer, without bias, to another area of the

organization."  Docket No. 55 at 6, ¶ 37; Docket No. 55-6 at 2.

The program, which was meant to improve respect among members of the Heart

Team, was held on September 23, 2008.  Plaintiff and Dr. Mahan participated, along

with most members of the Heart Team.  Plaintiff believed the training was effective.

After the program, plaintiff and Dr. Mahan worked together for three months, during

which time plaintiff made no further complaints about Dr. Mahan.  On December 9,

2008, Dr. Mahan gave plaintiff an award in recognition of her work in the operating room earlier in December.

On December 10, 2008, plaintiff's counsel served a Notice of Claim upon defendant, wherein plaintiff alleged suffering economic loss, humiliation, and emotional distress on account of the incident involving the thrown pericardium. *See* Docket No. 55-6 at 4-5. A week later, Ms. Pluemer and Ms. Crall held a meeting with plaintiff during which they informed her that she would be removed from the Heart Team and assigned to general surgery. Defendant contends that plaintiff's reassignment was in response to her discomfort working with Dr. Mahan. Plaintiff objected to being reassigned and contends that defendant was unwilling to remove Dr. Mahan from the Heart Team instead of her. Plaintiff's reassignment did not change her pay and resulted in an additional day off per week. While still eligible to receive overtime, plaintiff asserts that she does not work overtime in general surgery, where she is still employed with the defendant.

She brought the present lawsuit alleging that she was subjected to a hostile work environment on account of her gender.[2] Defendant filed the present motion, arguing that it is entitled to summary judgment on that claim.

---

[2]Plaintiff also brought a claim alleging a violation of her First Amendment rights. The Court granted defendant's motion to dismiss that claim on February 25, 2010 [Docket No. 45].

4

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  DISCUSSION

Plaintiff's sole remaining claim in this action alleges a hostile work environment due to her gender.  Plaintiff brings her claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), which prohibits employment discrimination on account of, *inter alia*, an individual's sex.  "[A] plaintiff may establish a

violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).  In order to prove a claim of sex discrimination based on a hostile work environment, "a plaintiff must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009).[3]

Defendant contends that the record lacks evidence showing that Dr. Mahan's conduct was on account of plaintiff's sex.  The Court agrees.  As plaintiff correctly points out, "the critical issue in determining whether harassment is because of sex is whether members of one sex are subjected to a disadvantage to which the other sex is not." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007); *see* Docket No. 61 at 13.  Plaintiff contends that the record before the Court contains "sufficient facts from which a reasonable juror could determine that Dr. Mahan treats men and women differently in the workplace."  Docket No. 61 at 13.

The first fact plaintiff identifies as demonstrating that Dr. Mahan's conduct was related to plaintiff's gender is that "Dr. Mahan has only ever thrown human tissue at female employees."  Docket No. 61 at 13.  The record contains no evidence, however,

---

[3]"In addition to establishing the hostile work environment elements, the plaintiff must also identify a basis for holding the employer liable under Title VII." *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 168 (10th Cir. 2009) (unpublished) (citing *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)).  The Court need not reach this issue for the reasons discussed below.

that Dr. Mahan has thrown human tissue during a surgery on any other occasion.

There is, therefore, no gender-related inference raised by his conduct, and plaintiff

identifies nothing else about the incident that would support an inference of gender

discrimination.  *See Winsor v. Hinckley Dodge*, 79 F.3d 996, 1000 (10th Cir. 1996) ("If

the nature of an employee's environment, however unpleasant, is not due to her

gender, she has not been the victim of sex discrimination."); *Bolden v. PRC Inc.*, 43

F.3d 545, 551 (10th Cir. 1994) ("General harassment if not racial or sexual is not

actionable.").

Plaintiff also contends that "there have been instances in which male and female

employees have engaged in the same conduct, and Dr. Mahan will yell at the women

for that conduct, but will ignore the men"; "Dr. Mahan prefers working with men over

women"; and that "Dr. Mahan has hit Plaintiff and at least one other female employee in

the head, and there is no evidence that he has directed such conduct at male

employees."  Docket No. 61 at 13-14.  In support of those assertions, plaintiff cites her

own deposition testimony where she makes the same averments.  When asked to

provide an example, she recounted that Dr. Mahan would yell at her for doing things

that he would not yell at a male nurse named Paul for doing.  *See* Docket No. 55-1 at

12.  She also testified that Dr. Mahan would treat a female nurse named Shannon less

favorably.  *Id.*  These general examples are insufficient to raise an inference of gender-

based discrimination.[4]  *See Riske v. King Soopers*, 366 F.3d 1085, 1091 (10th Cir.

_____

[4]In her response, plaintiff points out that defendant received complaints from other female employees about Dr. Mahan.  She does not identify this fact, however, as supporting the inference of sex-based discrimination.  Moreover, and in any event, plaintiff does not identify any evidence that defendant received complaints about Dr.

7

2004) (concluding that conduct which included reference to plaintiff's tight clothing and a defendant's following and whistling at the plaintiff was not sufficient to establish that the overall course of conduct was gender related).[5]  In short, "[t]here is no evidence that [these] incidents, while deplorable, were [gender] related."  *Denetclaw v. Thoutt Brothers Concrete Contractors, Inc.*, 287 F. App'x 17, 23 (10th Cir. 2008).

Even assuming that plaintiff had identified evidence showing that Dr. Mahan's conduct was gender related, the record does not support a jury finding that the conduct at issue "was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."  *Pinkerton*, 563 F.3d at 1058.  Plaintiff describes Dr. Mahan being rude and hitting her in the back of the head twice in the two years prior to the pericardium incident.  These occurrences are not, standing alone, sufficiently severe to support a hostile work environment claim.  *See Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) ("A plaintiff does not make a showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs.  Instead, there must be a steady barrage of opprobrious racial comments.'") (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (quotations, citation omitted).  Plaintiff cites nothing in the record indicating that she found Dr. Mahan's conduct sufficiently serious to

---

Mahan *only* from female employees.

   [5]*See also Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1260-62 (10th Cir. 1998) (concluding, in a case where there were multiple, gender-related "acts of unwanted physical contact," comments of a sexual nature, and a trip to Hooters, that there was not sufficient evidence that the conduct was, overall, motivated by gender or sufficiently pervasive to support a claim under Title VII).

complain about it before the pericardium incident.  *See Denetclaw*, 287 F. App'x at 23.

In fact, plaintiff failed to include the incidents in her December 10, 2008 Notice of Claim.

*See id.*; *see also Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 352 (6th Cir. 2005).

Adding the isolated incident involving the thrown pericardium to the analysis

does not change this conclusion.  *Cf. McNeil v. Kennecott Holdings*, 381 F. App'x 791,

795 (10th Cir. 2010) ("Even assuming that this comment was uttered as McNeil recalled

and was meant as a racial slur, it is not sufficiently severe to create an actionable claim

of hostile work environment, either standing alone or viewed in connection with the few

other incidents . . . .").  Plaintiff admits that, after she complained about the pericardium

incident, measures were taken that allowed her to work with Dr. Mahan without any

difficulty.  There is simply no evidentiary basis to conclude that the conduct at issue

"altered the terms or conditions of her employment and created an abusive working

environment."

At most, plaintiff describes uncivil and tortious conduct, but fails to identify

evidence that such conduct was due to her gender and was sufficiently severe so as to

support a hostile work environment claim *pursuant to Title VII*.[6]  *Cf. Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth a

general civility code.") (quotation omitted).

_____

[6]In this action, plaintiff has brought no tort claims arising out of the conduct
described.  Although she points out that defendant assigned her to general surgery
after the Notice of Claim, plaintiff does not contend that this reassignment somehow
added to the allegedly hostile work environment.  Moreover, she has neither brought a
claim for retaliation in her complaint nor raised retaliation in her response as a potential
basis for recovery.

**IV.  CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that defendant's motion for summary judgment [Docket No. 55] is

GRANTED.  Judgment shall enter in favor of defendant and against plaintiff.  It is

further

**ORDERED** that the trial of this matter scheduled to commence on January 24,

2011 is VACATED.


DATED November 19, 2010.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge